UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
DOMINICK HOOPER,

            Plaintiff,

  - against -

PETSMART, INC. and
KEVIN TREANOR,

           Defendants.
----------------------------------------------------------------------X

**MEMORANDUM AND ORDER**
18-CV-1706 (RRM) (ARL)

ROSLYNN R. MAUSKOPF, United States District Judge.

Pending before the Court are plaintiff's request to file a Second Amended Complaint (Doc. No. 24), and defendants' request to deny leave to amend, and to dismiss the First Amended Complaint for failure to state a claim (Doc. No. 21). For the reasons set forth below, the Court grants plaintiff's motion to file his proposed Second Amended Complaint solely with respect to his defamation claim. As the Second Amended Complaint no longer contains the claims which defendant seeks to dismiss, that motion is denied as moot.

BACKGROUND

The facts in this section are drawn from plaintiff's pleadings.[1] Plaintiff was a PetSmart employee for 12 years. During the last four of these (2013 to 2017), he worked at a store in Commack, New York, in a managerial capacity. His immediate supervisor was Kevin Treanor, who supervised the Commack store and many others. According to plaintiff, Treanor had an "aggressive" management style, threatening to fight male employees who had a "problem" with him and boasting about disciplining or threatening to fire other store leaders and employees.

---

[1] Some of the details are not included in all versions of the complaint, but the basic facts set forth in this section are alleged in all of plaintiff's pleadings.

Although plaintiff believed he had a good relationship with Treanor, that changed in January 2017, after Treanor transferred to the Commack store two "subordinate managers that were under-achieving in another store." Treanor implied that plaintiff should terminate them, but plaintiff told Treanor that this was unnecessary, noting that neither had "disciplinary records" and that there was no documentation of their alleged underperformance. Thereafter, Treanor sent plaintiff two warnings, alleging – untruthfully, according to plaintiff – that the Commack store was underperforming. On June 19, 2017, after receiving a "final warning," plaintiff asked Treanor for "recommendations on how to hold his managers accountable." Treanor said he would discuss that with plaintiff the following week, but fired plaintiff on June 23, 2017, before having any further discussions with plaintiff.

A. Procedural History

1. The Original Complaint

On April 3, 2018, plaintiff commenced this action by filing a "Verified Complaint," which named both Treanor and PetSmart as defendants. Although the pleading never mentioned 28 U.S.C. § 1332 or diversity jurisdiction, it appears that the case was being brought pursuant to this Court's diversity jurisdiction since the complaint contained only two state-law causes of action: one alleging breach of the implied covenant of good faith and fair dealing and the other alleging "prima facie tort." However, the pleading had an obvious jurisdictional defect: it did not allege the citizenship of Treanor who, like plaintiff, was likely a New York citizen. The pleading also had other jurisdictional defects: notably, it did not allege the citizenship of the parties or specify the amount in controversy, except to state that plaintiff was seeking "a sum exceeding the jurisdictional limits of any lower courts …." (Compl. at 6.)

Defendant did not answer the Verified Complaint but filed a pre-motion conference request, seeking permission to move to dismiss the action for lack of subject-matter jurisdiction and to dismiss both claims for failure to state a claim. (Doc. No. 15.) At an October 1, 2018, pre-motion conference, then-district Judge Joseph F. Bianco[2] asked about the basis for jurisdiction. Plaintiff's counsel requested leave to file an amended complaint and, when defendant did not object, Judge Bianco granted that request. Judge Bianco also gave defendant permission to move to dismiss the amended complaint without requesting another pre-motion conference.

2. The Amended Complaint

On October 3, 2018, plaintiff filed an amended complaint (Doc. No. 17), which was, in almost all respects, identical to the original complaint except that it no longer named Treanor as a defendant. It still contained the other jurisdictional defects noted above and contained the exact same causes of action as the original complaint.

On November 2, 2018, defendant filed a motion to dismiss the amended complaint, arguing only that plaintiff had failed to state a claim. (Doc. No. 21.) The motion did not address the jurisdictional defects. Plaintiff never responded to that motion. Rather, on November 20, 2018, plaintiff filed a pre-motion conference request, seeking permission to amend the complaint for a second time. In that letter, plaintiff's counsel specifically alleged diversity jurisdiction, asserting, "Plaintiff and Defendant are diverse in citizenship, and there is more than $75,000 in controversy." (11/20/18 PMC Request (Doc. No. 22) at 1.) However, he also sought "leave to amend his complaint to include address [sic] Defendant's violation of the Age Discrimination in

---

[2] This action was originally assigned to the Honorable Joseph F. Bianco, and transferred to the undersigned on May 21, 2019 upon Judge Bianco's elevation to the Second Circuit Court of Appeals.

3

Employment Act," asserting that "new facts" had been discovered. (*Id.*) The letter did not allege precisely what the "new facts" were.

Defendant opposed the pre-motion conference request, alleging that plaintiff had "evinced bad faith in seeking to amend the complaint." (12/11/18 Letter (Doc. No. 23) at 2.) Defendant's argument assumed that the only "new fact" discovered was plaintiff's own age. Defendant then cited to cases which denied leave to amend where allegations in the proposed amended complaint contradicted allegations in earlier versions of the pleading or in which the plaintiff unduly delayed moving to amend despite knowing of the grounds for the amendment.

On December 12, 2012, Judge Bianco held a pre-motion conference. He stayed the briefing of the motion to dismiss, granted plaintiff permission to move to amend, and entered a briefing schedule.

3. The Proposed Second Amended Complaint

At Judge Bianco's suggestion, plaintiff filed a proposed amended complaint (the "Proposed SAC") along with his motion to amend. The Proposed SAC (Doc. No. 25) differs from the prior pleadings in several significant respects. First, it expressly alleges both diversity and federal question jurisdiction. (Proposed SAC at ¶¶ 3–4.) Although it still does not specifically allege plaintiff's citizenship – alleging only that he resides in New York, (*id.* at ¶ 1) – it now alleges that defendant is "a corporation duly incorporated and existing under the laws of the State of Arizona," which is licensed to do business in New York, (*id.* at ¶ 2). The pleading also specifically alleges that the amount in controversy is in excess of $75,000, (*id.* at ¶ 3), and seeks damages of "no … less than $80,000," (*id.* at 6).

Second, the Proposed SAC has jettisoned the two state-law causes of action contained in the Amended Complaint[3] in favor of three entirely new claims: federal and state age discrimination claims and a defamation claim. The pleading does not, however, allege that plaintiff exhausted his administrative remedies or received a right-to-sue letter.

Third, the Proposed SAC adds allegations to support his age discrimination claims. The pleading still contains allegations regarding Treanor's "aggressive management style," (*id.* at ¶ 21), and plaintiff's refusal to terminate the two managers who had been transferred to his store, (*id.* at ¶ 23.) However, the complaint omits the allegation regarding plaintiff's conversation with Treanor about the managers which allegedly occurred less than a week before plaintiff was terminated. It adds several age-related allegations: that plaintiff is over 40 years old, (*id.* at ¶ 29); that Treanor was aware plaintiff had a heart operation six months before his termination, (*id.* at ¶¶ 15–16); that, during the six months before his termination, Treanor berated plaintiff about the performance and condition of his store and "harass[ed] Plaintiff about his doctor's appointments," (*id.* at ¶¶ 17–18); that Treanor did not hold younger managers to such high standards, (*id.* at ¶ 19); that, a month before terminating plaintiff, Treanor accused plaintiff of "changing … due to his health," (*id.* at ¶ 20); and that Treanor not only replaced plaintiff with a man 10 years his junior but also lowered the performance expectations for that employee, (*id.* at ¶ 27).

    4.   <u>The Opposition to Plaintiff's Motion to Amend</u>

Defendant opposes plaintiff's motion to amend on two grounds. First, defendant repeats the argument it raised in opposition to plaintiff's pre-motion conference request: that the proposed amendment is made in bad faith. Second, defendant argues that it would be futile to

---

[3] As such, plaintiff has abandoned these claims and defendant's motion to dismiss them (Doc. No. 21) is denied as moot.

5

permit plaintiff to amend his complaint because 1) plaintiff failed to exhaust his administrative remedies and 2) the Court should decline to exercise supplemental jurisdiction over the defamation claim.

In his reply, plaintiff has submitted, *inter alia*, a declaration from his counsel, Mr. Zack, which alleges 1) plaintiff filed a charge of discrimination with the EEOC in December 2017 and 2) the EEOC issued a right-to-sue letter. However, the documents attached to Exhibit B of the Zack Declaration suggest that plaintiff's December 2017 Charge of Discrimination did not allege age discrimination. One of the documents – the first page of Charge No. 520-2017-03349, dated Dec. 19, 2017 – indicates that plaintiff alleged retaliation, not age discrimination. That document refers to an attachment, which apparently was a letter from Mr. Zack to the EEOC dated August 11, 2017. In that letter, which contained many of the same allegations contained in the original complaint, Mr. Zack alleged that Treanor created a hostile work environment "by often saying people's jobs were in jeopardy," and "retaliated against Mr. Hooper based on his belief Mr. Hooper [sic] created a hostile work environment." (Doc. No. 30-2 at 9 of 10.)[4] The other document included in Exhibit B – an EEOC letter dated Dec. 20, 2017, which acknowledges receipt of the Charge – characterizes Charge 520-2017-03349 as alleging a Title VII claim. (Doc. No. 30-2 at 2 of 10.)

Exhibit C to the Zack Declaration is the EEOC's right-to-sue letter relating to Charge 520-2017-03349 (Doc. No. 30-3). It is clear from the boxes checked on the right-to-sue letter that the EEOC construed the Charge as alleging a Title VII claim, not an ADEA claim. The right-to-sue letter is dated February 27, 2018, and gave plaintiff 90 days from his receipt of the

---

[4] This letter precedes the filing of this EEOC Charge; thus, it is unclear whether this is the attachment to which the EEOC Charge refers.

letter to commence a federal action. Yet, as noted above, plaintiff did not seek leave to amend until November 20, 2018 – 266 days later.

DISCUSSION

A. Motion to Amend

Rule 15(a)(2) states: "The court should freely give leave when justice so requires." "The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010) (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993). Although the Second Circuit has stated that "prejudice to the opposing party resulting from a proposed amendment" is "among the 'most important' reasons to deny leave to amend," *id.* (quoting *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981), that court has identified "undue delay, bad faith, [and] futility of amendment" as other proper reasons for denying leave to amend. *State Teachers Ret. Bd.*, 654 F.2d at 856. Defendant raises two of these reasons: bad faith and futility.

1. <u>Bad Faith</u>

In arguing that plaintiff's "bad faith" justifies denying leave to amend, defendant cites to cases which are readily distinguishable. First, defendant cites to cases in which the proposed amended complaint contradicts allegations in earlier complaints. The Proposed SAC, however, does not allege facts that contradict those raised in earlier pleadings. The earlier pleadings implied that plaintiff was fired because he failed to terminate the two managers Treanor had transferred to the Commack store. Although the Proposed SAC adds new allegations suggesting age discrimination, the allegations regarding the two managers have not been omitted from the

Proposed SAC, and plaintiff does not allege that age discrimination was the sole basis for his termination.

Second, defendant cites to cases in which there was undue delay. There is no evidence of undue delay in this case. Plaintiff clearly knew at the time this action was commenced that he was 61 years old when he was terminated and, therefore, fell within a protected class. However, some of the facts supporting the age discrimination claims – *e.g.*, the age of the person who replaced plaintiff and what performance metrics were applied to this person – are facts which most likely were learned in the course of discovery. Indeed, at the December 12, 2018, conference, Mr. Zack specifically identified the change in performance metrics as one of the newly discovered facts. Furthermore, this case had been pending only 7½ months when plaintiff sought permission to amend. Given these facts, I see no basis for denying leave based on bad faith.

    2. Futility

As explained below, evidence supplied by plaintiff himself suggests that the age discrimination claims are unexhausted, untimely, and without merit. However, defendant has not advanced a meritorious argument for dismissing the defamation claim.

        a. The Age Discrimination Claim

Plaintiff's age discrimination claims have three obvious flaws. First, plaintiff did not allege age discrimination in the Charge of Discrimination he filed with the EEOC. He did not mention his age and checked the box to indicate he was alleging only "retaliation." The facts alleged in the narrative plaintiff attached to the Charge also did not suggest age discrimination. Accordingly, it seems likely plaintiff did not exhaust his age discrimination claims.

Second, the age discrimination claims are time-barred. The right-to-sue letter was dated February 27, 2018, and advised plaintiff that he had to commence his employment discrimination action within 90 days of his receipt of the letter.[5] Although plaintiff commenced this action on April 3, 2018, he did not request permission to add an employment discrimination claim until November 2018.

Third, the allegations in plaintiff's own pleadings suggest mixed motives for plaintiff's termination. The Supreme Court has held that a "plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009). Thus, plaintiff must establish "that age was the 'reason' that the employer decided to act," and "not just a motivating factor." *Natofsky v. City of New York*, 921 F.3d 337, 348 (2d Cir. 2019) (quoting *Gross*, 557 U.S. 176). In this case, plaintiff's pleadings – including the Proposed SAC – imply that Treanor was motivated by plaintiff's refusal to fire the two managers, and not solely because of plaintiff's age.

Each of these reasons standing alone is fatal to plaintiff's age discrimination claim. As such, an amendment to add such a claim would be futile.

    b. <u>The Defamation Claim</u>

Plaintiff also alleges a state-law defamation claim, and the defendant argues only that the Court can decline to exercise supplemental jurisdiction over this claim if it determines the age discrimination claims are meritless. However, while it is true that "district courts may decline to exercise supplemental jurisdiction over a claim … if … the district court has dismissed all claims over which it has original jurisdiction," 28 U.S.C. § 1367(c), defendant's argument misses one

---

[5] While it is unclear exactly when plaintiff received the letter, a caption at the top of the letter seems to indicate it was faxed to or from plaintiff on March 2, 2018.

9

key point: the SAC expressly alleges both federal question and diversity jurisdiction. The Court would have original jurisdiction over the defamation claim if diversity jurisdiction exists. Defendant does not argue that diversity jurisdiction is absent in this case; however, plaintiff's factual allegations in his SAC may not be sufficient to support diversity jurisdiction.[6] Moreover, neither party addresses the sufficiency of this claim. As such, the Court will permit an amendment solely with respect to the defamation claim, and allow the parties to further address its status in this Court, including whether dismissal or remand to state court is desired or appropriate, or whether further motion practice or amendment is sought.

## CONCLUSION

For the reasons stated herein, plaintiff's motion to amend to file a Second Amended Complaint (Doc. No. 24) is granted solely with respect to alleging a state-law claim for defamation. The motion is denied in all other respects. As the Second Amended Complaint no longer contains the claims that are the subject of defendant's motion to dismiss (Doc. No. 21), that motion is denied as moot.

The parties shall confer, and advise the Court by letter by October 24, 2019 as to their positions. No party may move for any type of relief without first seeking a pre-motion conference.

SO ORDERED.

Dated: Brooklyn, New York
      September 30, 2019

*Roslynn R. Mauskopf*

_____
ROSLYNN R. MAUSKOPF
United States District Judge

---

[6] As noted above, the SAC still does not allege plaintiff's citizenship, instead alleging only that he is a resident of East Patchogue, NY. SAC at ¶ 1. Moreover, though plaintiff alleges on information and belief that PetSmart, Inc. is an Arizona corporation, SAC at ¶ 2, the Court notes that the company's Form 10-K suggests that it is a Delaware corporation with its principal place of business in Phoenix, Arizona.